Good morning, Your Honors. May it please the Court, I'm Manuel Rios for the petitioner, Mr. Elder Martinez. There are two issues before the Court today, and the first issue is whether or not the record compels a finding that the numerous incidents suffered by Mr. Martinez on account of his race, including multiple incidents of physical harm, amount to past persecution in the aggregate. And the second one is whether or not the Board of Immigration Appeals abused its discretion and denied a motion to reopen by ignoring or to support changed country conditions. And as far as past persecution goes, an applicant can make a prima facie showing of asylum through showing of past persecution. And past persecution can be established by showing that the mistreatment rose to the level of persecution, that it was done on account of a protected characteristic under the Act, and that it was done by government actors or groups. So you're only appealing past persecution, not future persecution? Well, that's correct, Your Honor. As far as the merits go, the motion to reopen that deals with the country conditions, that would go more toward the well-founded fear of future persecution. Did the immigration judge or the BIA make any credibility findings as to Martinez-Rivas' allegations concerning past persecution? Well, Your Honor, the IJA found him generally to be credible, however stated that in regard to countrywide persecution, he did not find Mr. Martinez-Rivas credible. So it was a mixed credibility finding. And at the Board, we did actually challenge that. The Board reiterated our argument in its decision. However, they never came to a conclusion. So therefore, the court needs to presume that he is credible and go forward on that. So the issue is not whether or not these incidents occurred, but whether, as they are described by Mr. Martinez, do they amount to past persecution in the aggregate. Well, it's obviously a highly deferential standard. So maybe it would be helpful if you've distinguished cases relied on by the BIA, and I think they thought maybe Hoxha was the closest one. But what case is closest in your view, and certainly in light of the deferential standard? Well, Your Honor, I understand it's a deferential standard, but this court has consistently found where there's physical harm or acts of violence aimed at the applicant on more than one occasion over a period of years, the court has consistently found that no reasonable fact finder could conclude that the incidents in the cumulative did not rise to the level of persecution. So we're talking about cases like Chand, Lada, Cerita, Guo, which is G-U-O. Well, some of these other ones, like Chand, I think, involved coordinated assaults on the home. Others involved attempted murder. So one of the questions is whether it's compelled here, particularly because, as I understand it, the last three years he lived there were without incident. Is that correct? Yes, Your Honor. As far as the last incident I believe occurred in April of 2000, and he subsequently left to the United States with his visa and stayed here for six months in January of 2001. He did return in August of 2001 to Guatemala, only to try to attempt to return to the United States. So it appears that his intent was to just leave and remain in the United States and just kind of go back and touch Guatemala and come back to the United States. So he didn't actually live there the whole time. In terms of the physical incidents, would you describe those for us? Sure, Your Honor. Basically, there are three incidents that we could consider violent or resulting in physical harm. And the government makes a big to-do, and the board, that the respondent never sought medical attention. Well, this court has found in Lopez that medical attention isn't the primary cause of physical harm, but it may indicate the severity of the harm that he experienced. True enough, Your Honor. However, generally that's for cases where there's one incident, like one incident where there's a real egregious harm that suffered. That one incident could qualify them for persecution. So let's go through the repeated incidents here. Okay. So the administrative record at 339 to 340 showed that in August of 97 that he was assaulted inside of a store, and he was pissed to whip. By private individuals, right? That's correct. By private individuals. He was assaulted in a store. No one helped him. He was pissed to whip. The gun was pointed at him. Okay. So one of the questions I had is I counted up maybe three private incidents. Was there a basis for the past persecution where there's no connection with the government? Well, Your Honor, that could be. However, there's one of the two. Could be, or is it? I mean, under the law. Well, under the law it could be, because if it's a group the government can't control. The evidence shows that Mr. Martinez actually went and reported this to the police. The police did nothing. In fact, the second incident isn't simply by the private individuals. The second incident that occurred in which Mr. Martinez was assaulted, the police came and instead of getting the private individuals, arresting the private individuals, they arrested Mr. Martinez and then arrested him and beat him at the police station. He was forced to pay a bribe. This was when? This was in December of 1997, Your Honor, at 340 in the administrative record. So, I mean, it's not simply the general population of Guatemala. The police were there. So, you know, in every incident, except for the last incident, Mr. Martinez had consistently reported to the police. It seems that he has no recourse there. My understanding of the August 1997 was that the incident happened in a store. That is correct, Your Honor. That was private violence. He then left the store and went to the police and reported it. And the police said, we can't do anything. It's too late. What do we do with that? Does that compel a finding that the police were refusing to do anything? Well, not in that singular incident, Your Honor, but if we look at the other actions that were taken by the police and the other responses by the police to Mr. Martinez reporting of his victimization, you know, where the police actually came in December of 1997 instead of, you know, arresting the group that were beating him, they arrested Mr. Martinez and then subsequently beat them and participated in the persecution themselves. They stopped him on a bus, took him off the bus. So, the police actions are not... Is this the one where he was asked for identification? Yes, Your Honor. There are actually two incidents where he was asked for identification, the April 1998 incident and the April 2000 incident. When he says he was forced to pay a bribe. Right, and they destroyed his cedula or national ID card. So, we're not looking at this in a vacuum. If you look at it all together, it shows that the police are inclined to participate in this torture, Your Honor, or excuse me, persecution. Well, the IJ found there was really no kind of countrywide persecution also and that this all took place in Guatemala City. Is that right? That is correct, Your Honor. What about the claim that he could relocate to the other area, Livingston, where his family resides or other family resides? Yeah, understood. If the court finds that there was past persecution, then that's not Mr. Martinez's burden. It's the government's burden. And so, the board's decision actually states that Mr. Martinez did not illustrate, didn't carry his burden. However, that's based on a finding that Mr. Martinez didn't suffer past persecution. So, if the court were to find that Mr. Martinez suffered past persecution, this case should be remanded to the agency. So, the agency can determine whether or not the government can rebut that regulatory presumption of future persecution by either reasonable internal relocation or through changed country conditions. And I'd like to reserve the last bit of my time for rebuttal. Thank you. May it please the Court. Ada Bosk on behalf of the United States. Mr. Martinez does not contend, as we've heard, that he suffered or that he possesses a well-founded fear of future persecution. So, we agree the issue here is whether the physical harm that Mr. Martinez endured rises to the high level of persecution. And starting where I think the court was going, it is helpful to compare Mr. Martinez's experiences with other cases, with those where the court has found past persecution. And what do you think the closest case is that supports your position? Taking the worst, taking the worst thing that happened to Mr. Martinez, and that is the incident where he was arrested by the police, detained for three hours and hit. You compare the closest case, cases like Halim Gu with a GU instead of the GOU and Prasad. In all of those cases, there are other incidents, in addition to police violence. In Halim, he, Mr. Martinez was denied service at a store. In Halim, the petitioner was denied medical care. Mr. Martinez was accused by a security guard of being a thief. In Halim, the police accused the petitioner of transporting drugs. In Halim, there was an assault by private individuals, just as Mr. Martinez experienced discrimination by private individuals in Guatemala. In Prasad, there was a rock-throwing incident that's similar to what Mr. Martinez underwent. In GU, the G-U, there was continuous police harassment, and that's sort of equivalent to what Mr. Martinez experienced with the police stopping him and asking him for identification. The physical violence component is not similar, not comparable to the petitioners in Chan or GU or Ahmed, which is another case that he cites in his brief. In Ahmed, in addition to displacement, there is a series of politically motivated... I guess maybe let me think of it another way. If he lists basically eight instances, and some private, some... You've kind of gone through a number of them here. Could the I.J. have found past persecution based on that? Sure. I mean, I think reasonable minds could disagree about whether what happened to Mr. Martinez rose to the high level of persecution. But considering the cases where this court has found past persecution and considering the cases where it hasn't, this tends to fall toward the line of not past persecution. So in terms of the analysis, you're saying the court could have found that, but were not compelled otherwise based on the cases that we have to frame around it? Precisely. That is our argument, that there's nothing here that compels finding that he suffered past persecution. I mean, anyone that has undergone discrimination certainly would be sympathetic to Mr. Martinez's circumstances, but that doesn't mean that he established past persecution. Can you help me with the record in the case? Sure. This case, I can't seem to find a prior decision. This case was before us once before. Correct. And we said that there weren't sufficient findings and sent it back. Right. So the board then sent it back to the I.J. Correct. And the I.J. issued a new decision, which the BIA then affirmed, I guess. Correct. And so I'm just wondering, what did the I.J. add the second time that he didn't have the first time, or she or whoever? I think the immigration judge was just more specific with his findings, and he found that Mr. Martinez returned to Guatemala several times, and I'd like to point out one thing. When Mr. Martinez came to the United States in August of 2001, he was asked by immigration officials whether he feared returning to Guatemala, and he said no, and that's the administrative record of page 300. The immigration judge noted that he remained in Guatemala City for a year and a half, and didn't experience anything. The immigration judge noted, of course, that he not only went to university, but had a series of really prosperous jobs. I mean, the month before the first incident, he obtained a job with a zoo. I don't think he claimed economic persecution, as I read it. No, but I think where the... But, I mean, you know, you can have a nice job, and his complaint is that he's Garifuna, and that he's being singled out for his race in a society where he's a distinct minority, and time and again, I mean, basically he was threatened with death. He's beaten, and my question is, you know, it's one of these things where you're damned if you do, you're damned if you don't. Of course, if you die, then it's persecution, but it's too late to get your asylum granted. If you have really bad beating, you might get asylum. So the question here, it's a question of degree, isn't it? Sure, and I guess if I could back up just one second and then respond to your question. To finish off on the discrimination, I think the reason why the economic situation of Mr. Martinez was relevant is because where the court has found that discrimination rises to that level of persecution, it has considered a number of things, and economic, the economic situation, severe economic disparity is one of those, and I think that's why the immigration judge found that to be a relevant factor. That makes no sense to me, having read thousands of immigration cases. Time and again, asylum is granted without any reference to economic situation. Well, no fact pattern is going to be the same, and I think here, given the level, again, the worst thing that happened to Mr. Martinez, to put it that way, is that he was arrested by the police and detained for three hours, and he was hit. He didn't testify that he suffered any injuries. He didn't testify, he acknowledged that he didn't seek medical care, and when you contrast that to the cases like Ahmed, where there is, you know, his uncle was killed, his brother was abducted, he had serious scars throughout his body. Is there an identifiable group in that case that was after the? Yes, I mean, I believe Ahmed was, I'm going to mispronounce it, he is Bahari, which is a subsection that is in Bangladesh, although they consider themselves more to be Pakistani. So there is a subsection. But who was persecuting him? It would have been the Bangladesh government. Are you talking about this person? No, I'm not talking about this person. Okay. I'm talking about the case that we were. Ahmed. Yes, that was the situation in Ahmed. In Ahmed, the individuals of Bahari descent were essentially displaced from their homes and placed in refugee camps. So Mr. Ahmed was relegated to a refugee camp, and he was active in the political situation to help his people. And so that's, his encounters with the police were all tied to that political conduct. In Gu, which is another case that Petitioner cites, there are three encounters with the police. In one case, he was struck in the face and kicked. The second time, he was hit with an electric baton. The third time, he was detained for 15 days and beaten with a plastic pole. And those simply are not comparable to Mr. Martinez's experiences. And we know that if he were persecuted more or physically harmed more, then it would kind of go up on the scale. I guess what we're really asking is, is there sort of a baseline, and does he meet the baseline? Because he's at the lower end of, you know, all these cases, however it might be. Terrible as his situation is. But even in Mimouzian, you know, we basically said if you have, on more than one occasion, you have physical abuse combined with other things, threats, etc., that that's sufficient. On the lower end of the scale, if you will, and not to trivialize what happened here in any way, what do you think is the closest case to his? Well, again, I think, as I responded earlier, I think the Halim case, the GU with the DEU, those cases tend to be more similar. There are instances of police violence, and coupled with similar situations to Mr. Martinez's, that is, you know, the denial of services, the assault by private individuals. We don't disagree that reasonable minds could have disagreed on whether Mr. Martinez suffered past persecution, but the evidence we believe does not compel finding that he did. I guess what I was trying to get at before was that the IJ made a great deal of the fact that these were not related. The people who beat him up were not part of any organization. They were just individuals, members of the public. I'm not sure which way that cuts. Well, I think you have to look at Mr. Martinez's situation sort of in the context of Guatemala. I mean, most of his experiences happened right after the Civil War. It was when the present nature of the police force was first established. I think the country report says that happens in 1997. So most of his encounters are sort of on the early end. The reason it was important for the Guatemalan government to recognize the Garifuna people was because they had suffered discrimination. It would be hard-pressed to find an indigenous group in the Americas that hasn't. But that doesn't, in and of itself, mean that Mr. Martinez suffered past persecution. I only have 15 minutes, so just quickly on the motion. Go ahead. We'll give you one last sentence. Thank you. In the motion to reopen, I think where the board differed from Mr. Martinez is, it's not that it's not material evidence. The 2006 country report certainly relates to his claim. But his motion to reopen was untimely, and so he had to show that there were changed country conditions. And that means that he had to show something that was qualitatively different. Both the reports that were on the record before the IJ, and the IJ gave Mr. Martinez an additional opportunity to submit information. He just didn't before he rendered his decision in 2006. So both reports address discrimination. Both reports show that discrimination was sometimes evidence to physical violence. So for those reasons, yes, it's a court denial. As far as to answer Judge McEwen's question as to what the baseline is, the court's made this very clear, and it's also illustrated by the line of cases that each side actually relies on, is the baseline to determine whether or not a record compels past persecution is the number of physically violent incidents directed at the applicant. So if there's more than one over a period of years, plus other things, harassment, discrimination, that's what we have here, then the record compels it. The court has continuously found that. And we're talking about Chand, Lada, Sarita, Guo. All of those cases have mixed persecutors. The judge found that these were random acts. Well, they weren't random acts. They were maybe by random people, but they weren't by random acts. They were on account of his race. So that's not random. Those are calculated by random people. So there's a difference there. As far as the motions reopen goes, the board specifically found that it didn't illustrate country conditions. However, the mention of violence against this specific discreet tribe, or excuse me, race, ethnicity, in the 2006 reports is material, and it illustrates a change in country conditions as to them. As counsel has stated, the 2001 country reports were very close to the time of the Civil War where people were optimistic as far as the recognition of these indigenous groups. We're talking about later on, 10 years after the country reports, where this particular 2006 report was not available until 2007. And the 2005 report was submitted in this to illustrate that there was no mention of violence. And this mention of violence is very important. It's material, and it illustrates a change in country conditions as to Garifunas. Thank you.
judges: Schroeder, McKeown, Callahan